UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW JEROME BIGBEE, and DANIELLE LYN THOMPSON,<br><br>Defendants. | Criminal No. 21-60 (JRT/BRT)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

Nathan H. Nelson, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Daniel P. Repka, **REPKA LAW, LLC**, 351 15th Avenue North, South Saint Paul, MN 55075 for defendant Bigbee.

Paul P. Sarratori, **MESENBOURG & SARRATORI LAW OFFICES, PA**, 2601 Northwest Coon Rapids Boulevard, Coon Rapids, MN 55433 for defendant Thompson.

Defendants Andrew Jerome Bigbee and Danielle Lyn Thompson have been charged with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Indictment, Mar. 16, 2021, Docket No. 1.) Bigbee was separately charged in the Indictment with a second count of possession with intent to distribute a controlled

substance as a result of a police search of his residence that is not currently at issue in these objections. (*Id.*)

Thompson and Bigbee each filed Motions to Suppress evidence found at the motor home as a result of an October 16, 2020 police search. (Thompson Mot. Suppress, June 1, 2021, Docket No. 39; Bigbee 1st Mot. Suppress, June 1, 2021, Docket No. 43; Bigbee 2nd Mot. Suppress, June 29, 2021, Docket No. 78.) The Magistrate Judge issued a Report and Recommendation ("R&R") wherein she recommends that Defendants' motions be denied. (R&R, Nov. 9, 2021, Docket No. 109.)

Thompson and Bigbee have both objected to the R&R. (Thompson Obj. R&R, Nov. 23, 2021, Docket No. 110; Bigbee Obj. R&R, Nov. 23, 2021, Docket No. 112.) Thompson contends that the search was unreasonable because there was no reason for law enforcement to search her purse or to ask for consent to perform such a search. (Thompson Obj. R&R, at 1–2.) Bigbee argues that the automobile exception to the warrant requirement should not be applied to the search of the motor home and that the police's search of a storage yard where his Dodge truck was located was warrantless and illegal. (Bigbee Obj. R&R, at 1.)

Because there are ample facts supporting application of the automobile exception to the motor home and Bigbee did not have an expectation of privacy in his vehicle in the storage lot, the Court will overrule Bigbee's objections. Because some of the contents of Thompson's purse were in plain view, and she later consented to a full search, the Court

will overrule Thompson's objections. Accordingly, the Court will adopt the R&R in full and overrule both Defendants' objections.

## BACKGROUND

The parties do not dispute the relevant facts. (Thompson Mem. Supp. R&R Obj., at 1, Nov. 23, 2021, Docket No. 111; Bigbee Mem. Supp. R&R Obj., at 1, Nov. 23, 2021, Docket No. 113; Gov't Resp. to Obj. R&R, at 1, Dec. 06, 2021, Docket No. 114.) The Court therefore adopts in full the factual summary contained in the Magistrate Judge's R&R and briefly summarizes facts relevant to Defendants' objections here.

1. **Factual Background**

    a. **The storage lot search**

Prior to, and completely separate from, the October 16, 2020 motor home search, police received a call on August 19, 2019 that an ATM had been stolen. (R&R. at 15.) Video from the scene showed two suspects parking a large and dark colored truck near the ATM. (*Id*. at 15–16.) One of the suspects was wearing dark pants, a green shirt, and a white hard hat, and a white bandana while the second was wearing dark pants, a black sweatshirt with white lettering, and a respirator mask that had been colored pink. (*Id*. at 16.)

Around a week later, police received a tip call from a concerned citizen regarding the theft of the ATM and relaying details of the crime that had not been publicly released. (*Id*.) The caller named Bigbee and another individual as the two suspects and told police

that the suspects used Bigbee's truck to steal the ATM and then brought the truck to a storage yard in the area. (*Id*.)

After locating the storage yard, Police called the storage yard's telephone number, identified themselves, and asked if the storage yard owner was familiar with either of the alleged suspects. (*Id*. at 17.) The person answering the phone identified themselves as manager of the day-to-day business of the lot, rather than the owner, and indicated that he himself was familiar with one of the suspects. (*Id*.) The manager then agreed to let the police come inspect the lot. (*Id*.)

Upon arriving, the police noted that it was an open-air lot surrounded by a chain-link fence with the only enclosed spaced being the lot's office. (*Id*.) The storage lot manager directed the officers to the spot used by the alleged ATM robbery suspects. (*Id*.) At the spot, officers found a black Dodge 2500 crew cab truck in which police had previously stopped Bigbee. (*Id*.) Police looked through the truck's window and saw clothes similar to those worn by the suspects as well as chains similar to those seen in the security footage. (*Id*.) Based on this information, the Police obtained a warrant to seize the truck and a second warrant to search it. (*Id*. at 18.) Among the items discovered in the truck were 526 grams of methamphetamine. (*Id.*)

    b. **The motor home search**

Around midnight on October 16, 2020, Bloomington police received a 911 call concerning suspicious activity on Chicago Avenue in Bloomington. (*Id.* at 3.) The caller

reported four to five people coming and going from a parked motor home for the 40 minutes prior to the call. (*Id*.)

When police arrived, a motor home with a Pontiac sedan loaded on a trailer was among the parked vehicles at the address given by the caller.[1] (*Id*.) Police ran the license plate on the sedan and found that it belonged to Bigbee. (*Id.* at 4.) Police also discovered that Bigbee had an outstanding felony arrest warrant for a drug offense. (*Id*. at 4.) As law enforcement approached the motor home, officers noticed that the motor home's engine was running and that it was not connected to any utilities. (*Id*.)

After approaching the vehicle, Officers were able to confirm that Bigbee, Thompson, and a third individual had been in the motor home. (*Id*. at 4–10.) However, the 911 caller originally indicated that more than three individuals may have been present, so police decided to conduct a protective sweep of the motor home to make sure no one else was inside. (*Id*. at 11.) While conducting the protective sweep, one of the officers noticed a money counter on a table and a red purse within view that was filled with a "massive wad of $100 bills." (*Id*.) Officers then asked Thompson about the money and the purse, and Thompson stated she had $20,000 in cash in her purse; some was from a motorcycle accident settlement she received while the other portion was gambling proceeds. (*Id*. at 12.) The questioning officer was skeptical of Thompson's response and asked if it was

---

[1] Notably, the motor home was parked in an area where camping and/or permanent residence in a vehicle was not permitted. (*Id*. at n. 1.)

okay for him to search the purse to verify what she had told him. (*Id*.) Thompson agreed, and both her and the officer walked into the motor home to retrieve the purse. (*Id*.) Thompson then opened her purse and showed its contents— "wads" of cash as well as drug paraphernalia—to the officer. (*Id*.)

**2. Procedural History**

On June 1, 2021, Thompson and Bigbee each filed Motions to Suppress evidence found at the motor home as a result of the October 16, 2020 search. (Thompson Mot. Suppress; Bigbee 1st Mot. Suppress.) On June 29, 2021, Bigbee filed a second Motion to Suppress the evidence recovered from his vehicle as a result of the storage lot search. (Bigbee 2nd Mot. Suppress.) After a hearing, the Magistrate Judge issued an R&R on November 9, 2021 recommending that the motions be denied.

Thompson and Bigbee both have submitted objections to the R&R. (Thompson Obj. R&R; Bigbee Obj. R&R.) Thompson argues that there was no reason for law enforcement to search her purse or to ask for consent to perform such a search and objects to the conclusion that her motion should be denied. (Thompson Obj. R&R, at 1–2.) Bigbee argues that the Magistrate Judge should not have applied the automobile exception to the search of the motor home and that that Magistrate Judge incorrectly found that he did not have a reasonable expectation of privacy in the storage lot where the Dodge truck was located. (Bigbee Obj. R&R, at 1.)

**DISCUSSION**

I.   **STANDARD OF REVIEW**

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). For a dispositive matter such as a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1). "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).

II.   **ANALYSIS**

   a.   **Bigbee's Objections**

Bigbee raises two objections to the R&R. First, Bigbee argues that the automobile exception should not have applied to the motor home because the motor home was functionally more similar to a house than a vehicle. Second, Bigbee objects to the R&R's conclusion that he did not have a reasonable expectation of privacy in his Dodge Truck located at the storage lot. Bigbee accordingly asks the Court to grant his suppression motions.

### b. October 2020 Search of the Motor Home

Bigbee contends that the Magistrate Judge erred in concluding that that the automobile exception to the warrant requirement applied to the motor home. Instead, Bigbee contends that: (1) there was insufficient evidence to support that the motor home was moveable; (2) the R&R put undue weight on the fact that the motor home was properly registered; (3) the motor home's use of electricity and plumbing make it more akin to a house; (4) the motor home was in front of its owners' house and should have been considered a residence; and (5) the interior of the motor demonstrated that it was lived in. (Bigbee Mem. Supp. R&R Obj., at 2.)

Although the Fourth Amendment generally requires a warrant before performing a search, the Supreme Court has long "recognized an exception to the Fourth Amendment's warrant requirement when officers search an automobile." *United States v. Blaylock*, 535 F.3d 922, 926 (8th Cir. 2008) (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)). The automobile exception can even apply to a motor home—quite literally straddling the line between vehicle and residence—when the motor home is readily mobile. *See California v. Carney*, 471 U.S. 386, 393–94 (1985). As Bigbee correctly notes, the key to determining whether the exception applies turns "on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." *Id*. at 394.

The record supports a conclusion that the vehicle was readily movable. The 911 caller that first alerted police of suspicious activity stated that the motor home had parked less than an hour before the call was placed. Police also noted that the motor home's engine was running. Moreover, the vehicle was driven by police from the scene later that night.

Although Bigbee argues that the record does not specify whether the running engine was the vehicle's or an engine used to generate electricity for the vehicle's utilities, he is incorrect. The record clearly states that police identified that it was the vehicle's engine they heard. It is fair to say that a vehicle's running engine is likely distinguishable from the smaller engine of a portable generator.

However, even if the Court were to agree with Bigbee that the record is ambiguous as to which engine was running, this fact alone is not enough to refute the substantial evidence objectively indicating that the motor home was movable. There were no outward and apparent circumstances indicating that the vehicle was incapable of or not intended for transportation—such as the motor home being placed on cinder blocks or located in an area where it was suitable for residential use.

Bigbee's argument that the R&R improperly relied on the motor home's proper registration is likewise unpersuasive. Regardless of the fact that registration is a factor the Supreme Court has determined is relevant, *Carney*, 471 U.S. at 394 n.3, being properly registered indicates that a vehicle is more likely capable of movement.

Bigbee's remaining arguments ignore the relevant factors when determining if the automobile exception applies. The fact that the motor home had a bathroom and kitchen and looked lived in does not have any bearing on the motor home's apparent ability to be readily mobile. Similarly, Bigbee's argument that the vehicle was outside of its owner's residence is irrelevant and therefore the police's incorrect belief that the owner lived a few blocks away has no bearing on the movability of the motor home.

The record clearly indicates that the motor home was readily capable of movement, had just recently been moved to the scene, and was located on a public road in a city where camping and residing in a vehicle were prohibited. Accordingly, the Magistrate Judge correctly concluded that the automobile exception applied to the search of the motor home and the search was lawful.

### a. The Storage Lot Evidence

Bigbee objects to the R&R's conclusion that he did not have a reasonable expectation of privacy in the Dodge truck that was stored at the storage lot.

"An individual asserting Fourth Amendment rights 'must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'" *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017) (quoting *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004)). "The defendant moving to suppress bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." *Id* (internal quotation omitted).

Bigbee has failed to meet this burden. He has not established that choosing to park the truck in the storage lot gave him a reasonable expectation of privacy such that the police looking in the vehicle's windows violated any of his rights.[2] Importantly, the storage lot was an open-air lot used by other individuals. As the Magistrate Judge correctly concluded, anyone that entered the storage lot would have been able to see the exact same items that the police did and there is no legitimate expectation of privacy for items that can be plainly viewed from the outside of a vehicle. *Texas v. Brown*, 460 U.S. 730, 740 (1983) ("There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (citations omitted).

Because Bigbee has not demonstrated that he had a reasonable expectation of privacy when parking a truck in a location where multitudes of people would be able to look inside the vehicle, his objection is overruled.

Accordingly, the Court will overrule both of Bigbee's objections, adopt the R&R, and deny his Motions to Suppress.

b. **Thompson's Objections**

Thompson objects to the R&R and argues that there was no lawful reason to look inside her purse. Thompson contends that she retained a right to privacy in her purse

---

[2] As the United States and the Magistrate Judge both acknowledged, Bigbee has not even established that he has a possessory or property interest in the truck sufficient to give him *any* rights to even challenge the search. (R&R at 37 n. 10.)

and that the purse should not have been searched during the protective sweep as nobody could have been reasonably hiding within the mobile home.

Thompson's argument is unpersuasive. First, the police indicated that they saw the contents of Thompson's purse during the course of the protective sweep. Although Thomson states that she does not dispute the relevant facts, she does seem to contest the R&R's factual conclusion the money within her purse was visible without the need to open it. (Thompson Mem. Supp. R&R Obj. at 2.) The Court finds no reason, nor has Thompson provided one, to doubt the police officer's assertion that some of the contents of the purse were in plain view. This is especially true when the police officer was immediately able to conclude that the purse contained a significant sum of money.

Further, even if there was some ambiguity regarding the visibility of the contents of Thompson's purse, Thompson consented to a search. Thompson went inside the motor home with the officer to retrieve the purse, opened the purse, and displayed its contents. "Law enforcement officers do not violate the Fourth Amendment by asking a person for consent to search or other types of cooperation, even when they have no reason to suspect that person, 'provided they do not induce the cooperation by coercive means.'" *United States v. Yang,* 345 F.3d 650, 654 (8th Cir.2003) (quoting *United States*

*v. Drayton,* 536 U.S. 194, 201 (2002)).  Thompson has not argued that her consent was coerced nor does the record contain any evidence suggesting coercion.

Because the money in Thompson's purse was visible and because she consented and participated in its search, Thompson's Fourth Amendment rights were not violated. The Court will therefore overrule Thompson's objections, adopt the R&R, and deny her Motion to Suppress.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Thompson's Objections to the R&R [Docket No. 110] are **OVERRULED;**

2. Defendant Bigbee's Objections to the R&R [Docket No. 112] are **OVERRULED;**

3. The Magistrate Judge's R&R [Docket No. 109] is **ADOPTED;**

4. Defendant Thompson's Motion to Suppress Evidence as a Result of Search and Seizure [Docket No. 39] is **DENIED;**

5. Defendant Bigbee's First Motion to Suppress Evidence [Docket No. 43] is **DENIED**; and

6. Defendant Bigbee's Second Motion to Suppress Evidence [Docket No. 78] is **DENIED**;

DATED: January 13, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
Chief Judge
United States District Court