UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-60 (JRT/DJF)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDREW JEROME BIGBEE,

    Defendant.

**DEFENDANT'S POSITION REGARDING SENTENCING**

Defendant Andrew Jerome Bigbee, by and through his attorney, respectfully submits this Position Regarding Sentencing. For the reasons stated below Mr. Bigbee respectfully requests that the Court take all aspects of Mr. Bigbee's life into consideration when pronouncing its sentence.

    I.    **SECTION 3553(a) FACTORS**

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. Section 3553(a) represents "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall v. Unites States,* 552 U.S. 38, at 50 & n. 6 (2007) (citation omitted). Courts must consider each of those factors in fashioning sentences that are "sufficient, but not greater than necessary" to comply with those statutory objectives. 18 U.S.C. § 3553(a).

**A.   The nature and circumstances of the offense and history and characteristics of the defendant.**

The Court has presided over this case for close to three years including a weeklong trial and is familiar with the offense. However, the Court is not familiar with the true history and character of Mr. Bigbee.

Mr. Bigbee grew up in a broken home and at the age of 16 moved out. He got a job and moved in with some friends who were older than him. It was about this time that he started using drugs and alcohol. By the time he was 18 he had moved into his own place and became addicted to cocaine. This coincided with him beginning to run afoul of the law. As noted in the Presentence Investigation Report (PSR), Mr. Bigbee pled guilty to multiple offenses from the age of 18 to 24.

In 1990, when Mr. Bigbee was just 24 years old, he pled guilty to a charge of Conspiracy to Distribute and Possession with Intent to Distribute Cocaine when he knew that he was looking at 20 years in prison. Mr. Bigbee took responsibility for his actions and determined that he was going to use his time in prison to beat his addiction.

Once released, Mr. Bigbee attempted to rebuild his life. However, he kept having minor run ins with the law. Most offenses were petty misdemeanor driving offenses, one was for violating a No Contact Order and perhaps the most serious was on a charge of possession of marijuana. To all these offenses, Mr. Bigbee pled guilty.

There was a charge of Prohibited Person in Possession of a Firearm that Mr. Bigbee disputed and was acquitted. Mr. Bigbee is not a fan of firearms. He does not own nor does he possess firearms.

While the PSR can make it look like Mr. Bigbee has not done anything productive with his life since he was released from prison, that is far from the truth. After his mother passed away in 2009 Mr. Bigbee purchased the home she had lived in from his brothers and tried to make a living as a mechanic. Mr. Bigbee is an excellent mechanic, but not a cutthroat businessman. You see, Mr. Bigbee would give the shirt off his back to a complete stranger. A lot of the clientele Mr. Bigbee helped as a mechanic had a hard time paying, and as such he donated most of his work.

Mr. Bigbee was not only generous with his skills as a mechanic, but he would also let anyone who needed a place to stay crash at his house. All the while Mr. Bigbee was trying to maintain his sobriety. But when he was unable to keep up with the mortgage payments for his house and he lost it, he also lost his struggle with addiction. Mr. Bigbee began using drugs again in 2019. This time his drug of choice was methamphetamine rather than cocaine. The life he had tried to build since his release began to unravel. He did not have the money to support his addiction, so he began to associate with people who had methamphetamine. Yet throughout the tumultuous 18 months covered in this case, he never once resorted to violence in any form. He was generous and tried to help his friends in any way he could.

Indeed, Mr. Bigbee's conduct since his incarceration in Sherburne County Jail shows that he is already taking advantage of this time to better himself. He has

completed over one hundred educational courses which amounts to well over one thousand hours spent working on those courses. He also is participating in a psychoeducation group as well as cognitive behavioral therapy.

**B.    Seriousness of the offense, respect for the law, just punishment.**

The offenses in this matter are undoubtedly serious. Mr. Bigbee himself is an addict and understands the damage that methamphetamine can do. And while he is ashamed of some of his behavior that was on display during the trial, he understands that a lot of that behavior was due to his addiction. Mr. Bigbee does not need to spend the rest of his life in prison to appreciate the seriousness of this case.

**C.    Deterrence to criminal conduct and protection from further crimes.**

Mr. Bigbee has been in the Sherburne County Jail since May of 2021. It has been close to three years since he has been able to walk outside and feel a breeze upon his face. While the Court does not give credit for any time served, Mr. Bigbee would ask the Court to take into account the harsh time he has spent at the Sherburne County Jail. Mr. Bigbee was hospitalized twice due to Covid related issues while at Sherburne. Both hospital stays lasted for close to a week each due to his low oxygen levels. Since these episodes he has been suffering with the symptoms of Long Covid. *See* USSG §5K2.0(a)(2).

**D.     Need for treatment and training.**

As noted above, Mr. Bigbee has used his time in the County Jail to take advantage of the treatment and training offered while incarcerated. Mr. Bigbee is sober but understands that his sobriety is something that he cannot take for granted. He will need to work hard every day for the rest of his life fighting his addiction. That is why a treatment program would be appropriate for Mr. Bigbee rather than an extended prison sentence.

**E.     Kinds of sentences available and the sentencing ranges established.**

The Presentence Investigation Report gives recommendation of life in prison (PSR ¶104) based upon an offense level of 43 and a criminal history category of III. Mr. Bigbee argues that the actual offense level should be 40 and his actual Criminal History Category should be II; which results in a presumptive range of 324 to 405 months.

> **i. Mr. Bigbee Never Possessed a Firearm, thus 2 points should be subtracted from offense level.**

Mr. Bigbee did not possess any firearms. (PSR ¶¶ 12, 17, 29). The two firearms discovered at the residence in Richfield were not located in the house, nor the detached garage which is where Mr. Bigbee worked as a mechanic. They were found in the attached garage which was simply a storage building. Mr. Bigbee's acquaintances often left items in that garage.

The other firearm mentioned in this case was found in a home in Elko, Minnesota where Danielle Thompson was staying with her child. Mr. Bigbee did not reside inside that house. It is true that after his release (after his arrest in the RV in Bloomington) he went to stay at that residence in Elko, but Ms. Thompson was already staying there. Mr. Bigbee slept in either his car or the detached building on the property. He did not own or possess anything in the house other than his clothing that was in the laundry.

None of Mr. Bigbee's history indicates that he would ever possess a firearm. Indeed, in 2013 when was charged with Possessing a Firearm, Mr. Bigbee denied that he possessed the firearm, went to trial, and was vindicated.

### ii. Mr. Bigbee did not play an Aggravating Role nor was he an organizer or leader of criminal activity, thus 6 points should be subtracted from the offense level.

Mr. Bigbee was not an organizer or leader of criminal activity. (PSR ¶¶ 21, 22, 30, 32) This case alleges that Mr. Bigbee, Danielle Thompson, and Lee Dahlberg engaged in a conspiracy to distribute methamphetamine. Yet, evidence at trial showed that Ms. Thompson was the one texting with someone referred to as "Bossman" whom she would not identify at trial. In those texts she and "Bossman" discussed being nervous and the unloading of cargo while Ms. Thompson was staying at the residence in Elko, MN. Mr. Dahlberg testified that he received over a pound of methamphetamine from Ms. Thompson and that he and Ms. Thompson texted or were in communication with each other every day.

Mr. Bigbee did not arrange for a house for Ms. Thompson to stay in after their arrest in Bloomington. Ms. Thompson arranged to stay at Clyde Weierke's residence in Elko while Mr. Bigbee was having a breakdown and attempted suicide. Once Mr. Bigbee was stable and released from the hospital, he had no other place to go. He did not stay inside the residence in Elko. This is the same residence where Clyde Weierke told Mr. Dahlberg to go retrieve cash to pay for Ms. Thompson and Mr. Bigbee's attorney's fees. It is this same Clyde Weierke that the Southwest Drug Task Force had been investigating for years.

There are allegations in the PSR of a kidnapping in relation to drug dealing. (PSR ¶ 15) It is Mr. Dahlberg who is referred to as the "drug dealer" that was owed money that led to Michael Hardy kidnapping KMM in the PSR. (PSR ¶ 15). (*See* Minnesota State Court File Number 02-CR-20-5359). Mr. Bigbee had nothing to do with this kidnapping or any other kidnapping. Mr. Dahlberg was the one who directed Mr. Hardy to kidnap the young lady as she owed debts to Mr. Dahlberg. Mr. Bigbee's name was only brought up in that case as a way for Mr. Hardy to try to get a deal by throwing someone under the bus.

Mr. Bigbee did not direct Heidi Fox or Robert McGinley in any way. He simply contacted a friend to help them rent a vehicle. Once he learned that they had been found to have methamphetamine in that vehicle he tried to calm his friend who was nervous she would be in trouble for Ms. Fox and Mr. McGinley's actions.

### iii. Mr. Bigbee did not engage in Obstruction of Justice.

Mr. Bigbee acknowledges that under the current PSR he did not receive an adjustment for Obstruction of Justice. (PSR ¶ 33). However, the only reason he did not receive that adjustment is because the PSR argues that he should receive a 2-point upward adjustment pursuant to USSG §2D1.1(b)(16)(D), and Mr. Bigbee disagrees with that adjustment. Without the §2D adjustment he could face a 2-point upward adjustment. Mr. Bigbee argues that even without the §2D adjustment, he still should not receive a 2-point upward adjustment for Obstruction of Justice.

Mr. Bigbee took this case to trial and did not commit perjury. He simply lost at trial, that does not equate to perjury, nor does it equate to Obstruction.

Similarly, he never told S.B. to lie to the police if she was asked about the vehicle she rented for Ms. Fox and Mr. McGinley. He was simply trying to calm her nerves and assure her that she had done nothing wrong. Ms. Fox and Mr. McGinley apparently lied to S.B. about what they wanted the vehicle for, and Mr. Bigbee just reminded her of that fact.

While not mentioned in the PSR, it was alleged at Ms. Thompson's sentencing that Mr. Bigbee threatened her and told her to take the blame for the crimes. Mr. Bigbee NEVER threatened Ms. Thompson, nor did he try to convince her to take any blame. Mr. Bigbee has been incarcerated since the arrest at Elko and did not place any calls prior to Ms. Thompson's plea. The only contact he had was with his attorneys.

> **iv. Mr. Bigbee's criminal history category substantially over-represents the seriousness of his criminal history.**

Pursuant to the Sentencing Guidelines the Court can depart from the Guidelines if the "defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." USSG §4A1.3(b)(1) The PSR concludes that Mr. Bigbee has a criminal history score of 5 which results with him being in the criminal history category of III. (PSR ¶¶ 48, 51, 52, 59). Mr. Bigbee argues that his two of his cases (PSR ¶¶ 51, 52) should not be counted for the following reasons.

On May 23, 2019, he pled guilty to a misdemeanor charge of violating a No Contact Order. (PSR ¶ 51) As noted in the PSR, Mr. Bigbee was near a vehicle where the protected party was. Mr. Bigbee was not engaged in any threatening behavior; in fact, the protected party had asked for his help. The protected party did not want the protective order to be in place yet was unable to withdraw it as it was imposed by a state court. Mr. Bigbee pled guilty and took responsibility for his actions and the case was subsequently *dismissed*. Thus, this point should not be added to his criminal history score as it unfairly over-represents the seriousness of the underlying conduct.

On January 21, 2020, Mr. Bigbee pled guilty to possessing a little over half a gram of liquid marijuana. True, marijuana was a controlled substance at the time of Mr. Bigbee's possession of it, but it is now legal under Minnesota state law. At the time he was in possession of marijuana he was struggling with his addictions and determined that marijuana was the lessor of two evils. After a period of probation this matter was also *dismissed*. Thus, this point should not be added to his criminal history score as it unfairly over-represents the seriousness of the underlying conduct.

The absence of these two convictions from Mr. Bigbee's criminal history would result in a criminal history score of 3 which would result in him being in the Criminal History Category of II.

Thus, the sentencing range for Mr. Bigbee is 324 months to 405 months (an offense level of 40 and a Criminal History Category II). While this range is a starting point it is up to the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the sentencing guideline objectives. 18 U.S.C. § 3553(a).

### F.   Need to avoid sentencing disparities.

In this case the Court heard from three alleged coconspirators to the crime: Ms. Thompson, Mr. Dahlberg, and Mr. Bigbee.

The Court presided over Ms. Thompson's sentencing and is well aware of her sentence. The Court is also aware of her role in the case at bar.

Mr. Dahlberg, who was not charged in Federal Court, was charged in relation to his conduct in this case and served *less than 2 years* in state prison. That conduct is also in relation to his involvement in the kidnapping plot that he and Mr. Hardy executed.

The PSR in this case is recommending that Mr. Bigbee be sentenced to life. There is a huge disparity between Mr. Bigbee going to prison for the rest of his life versus Ms. Thompson getting credit for time served and Mr. Dahlberg serving less than two years.

G.   **Prison Designation Close to Home**

Mr. Bigbee would request a Minnesota designation as possible prison facilities for him to be sent to. Mr. Bigbee would request that he not be sent to Oxford, Wisconsin.

## CONCLUSION

Mr. Bigbee respectfully requests that after considering the § 3553(a) factors and the recalculation of the Adjusted Offense Level and Criminal History Category that this Court impose a sentence of less than 180 months as that would be "sufficient, but not greater than necessary" to comply with the guidelines in his case.

Respectfully Submitted,

Dated: March 26, 2024

BY:   */s/ Wyatt Arneson*

Wyatt Arneson
Counsel for the Defendant